IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY CRESSMAN                              :       CIVIL ACTION
                                           :
         v.                                :       NO.  06-4290
                                           :
MICHAEL J. ASTRUE,[1]                      :
Commissioner of Social Security            :

## MEMORANDUM

LOWELL A. REED, Jr., Sr. J                                          AUGUST 1, 2007

      Before the court for consideration is plaintiff's brief and statement of issues in support of request for review (Doc. No. 5) and the response and reply thereto (Docs. No. 6; 7).  The court makes the following findings and conclusions:

      1.     Gary Cressman ("Cressman") filed for disability insurance benefits ("DIB") under Title II, of the Social Security Act, 42 U.S.C. §§ 401-433, with a protective filing date of December 13, 2004, alleging an onset date of May 17, 2003.  (Tr. 98-100).  Throughout the administrative process, including an administrative hearing held on April 18, 2006 before an administrative law judge ("ALJ"), Cressman's claims were denied.  (Tr. 5-7; 10-19; 21-72; 73-79).  Pursuant to 42 U.S.C. § 405(g), Cressman filed his complaint in this court on September 26, 2006.

      2.     In her decision, the ALJ concluded that Cressman has a severe musculoskeletal impairment.  (Tr. 15 ¶ 1; 15 Finding 3).[2]  The ALJ further concluded that Cressman's mental impairment has no more than a minimal effect on Cressman's ability to work, and thus, was not severe.  (Tr. 15 ¶¶ 1-3).  In the alternative, the ALJ determined that if Cressman's mental impairment was severe, it did not meet the durational requirement of 20 C.F.R. 404.1527(d).  (Tr. 15 ¶ 3).  Ultimately, the ALJ concluded that Cressman's impairments did not meet or equal a listing, that he had the residual functional capacity ("RFC") to perform light work with a sit/stand option, and that he could no longer perform his past relevant work.  (Tr. 15 ¶¶ 4, 5; 18 ¶¶ 2, 3; 15 Findings 4, 5; 18 Finding 6).  Since the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Cressman could perform, the ALJ determined that Cressman was not disabled.  (Tr. 18 ¶ 6- 19 ¶ 2; 18 Finding 10; 19 Finding 11).

      3.     The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue has been substituted for former Commissioner Jo Anne Barnhart as the defendant in this lawsuit.

[2] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

    4. Cressman raises four arguments in which he alleges that the determinations by the ALJ were either not supported by substantial evidence or were legally erroneous. Because the ALJ did not apply the proper legal standards and because her determination is not supported by substantial evidence, I must remand to allow the Commissioner to conduct the proper analysis.

    A. Cressman argues that the case should be remanded because the ALJ erred in rejecting the opinions of Rosalinda Gabriel, M.D. ("Dr. Gabriel"), including that Cressman had a GAF of 40. "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Courts in the Eastern District of Pennsylvania have repeatedly noted that GAF scores constitute medical evidence that is accepted and relied on by physicians, and that where an ALJ fails to explain why the scores have been discounted, a remand is necessary. See, e.g. Robleto v. Barnhart, No. 05-4843, 2006 WL 2818431, at *8 (E.D. Pa. Sept. 28, 2006); Dougherty v. Barnhart, No. 05-5383, 2006 WL 2433792, at *9-10 (E.D. Pa. Aug. 21, 2006); Colon v. Barnhart, 424 F. Supp.2d 805, 813-14 (E.D. Pa. 2006); Span ex rel. R.C. v. Barnhart, No. 02-7399, 2004 WL 1535768, at *6 (E.D. Pa. May 21, 2004); Escardille v. Barnhart, No. 02-2930, 2003 WL 21499999, at *6-7 (E.D. Pa. June 24, 2003). Dr. Gabriel assessed Cressman with a GAF of 40 on May 18, 2005 and February 13, 2006, and, at the very least, signed the therapist's notes stating that Cressman had GAFs of 40-42 on June 7, 2005, August 8, 2005, October 17, 2005, and April 3, 2006. (Tr. 250; 254; 255; 256; 257; 259; 277). A GAF of 40 denotes "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, is unable to work)," and a GAF of 41-50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 32, 34 (4th ed. 2000). A GAF of 40-42 indicates that the person cannot perform competitive work on a sustained basis. I note that the ALJ did not include any review of the GAF scores in her decision and thus failed to explain her apparent rejection of this medical evidence of serious impairment. I thus conclude that the case must be remanded for the ALJ to properly consider the assessed GAF scores.

    B. Additionally, Cressman contends that the ALJ erred in finding that his mental impairment was not severe.[3] "An impairment or combination of impairments can be found 'not

---

[3] With regard to the ALJ's finding that Cressman's mental impairment did not satisfy the duration requirement of 20 C.F.R. § 404.1509, the court notes that Cressman was assessed GAFs ranging from 40 to 42 on May 18, 2005, June 5, 2005, August 8, 2005, October 17, 2005, February 13, 2006, and April 3, 2006 (Tr. 250; 254; 255; 256; 257; 259; 277). S.S.R. 82-52 provides, "When the application is being adjudicated (or a hearing decision is being issued) before the impairment has lasted 12 months, the nature of the impairment, the therapeutic history,

severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" Newell v. Comm'r, 347 F.3d 541, 546-547 (3d Cir. 2003) (quoting SSR 85-28).  The step two determination is a *de minimus* screening device under which any doubt should resolved in favor of the claimant.  Id.; McCrea v. Comm'r., 370 F.3d 357, 361 (3d Cir. 2004).  After assessing Cressman with severe bipolar disorder and noting Cressman had a history of aggressive and destructive behavior and had attempted suicide several times with an involuntary commitment to a hospital in 1995, Dr. Gabriel found that Cressman had a "marked impairment" as a result of his poor concentration, attention span, chronic pain, and mood swings in performing a job over a number of weeks without frequent absences, in performing routine tasks on a productive basis, in his ability to properly complete sequential tasks, in his ability to perform at a consistent pace without an unreasonable number and length of rest periods, and in his ability to work without psychologically based interruptions or distractions.  (Tr. 39; 267; 277-78).  In finding that Cressman did not have a severe mental impairment, the ALJ stated that if she were to credit Dr. Gabriel's mental residual functional capacity assessment of Cressman, then Cressman would meet listing 12.04.  (Tr. 15 ¶ 2).  However, the ALJ stated she did not give Dr. Gabriel's assessment controlling weight because: (1) the assessment was conducted when Cressman was new to treatment; (2) Dr. Gabriel performed the assessment at the request of Cressman's attorney; (3) Cressman dropped out of treatment after approximately 6 months and did not return until 6 more months had passed, which was when Cressman's disability hearing occurred; (4) Cressman did not start outpatient mental health treatment until after his disability claim had been denied; and (5) Dr. Gabriel's findings do not take into account that Cressman helped out at his friend's auto body shop and father's dump truck business from time to time.  (Tr. 15 ¶¶ 2-3).  Although the record reflects that Cressman repeatedly attempted to work for his father and help out his friend's business, which he stated had always been his coping strategy for his mental impairment, the record reveals that the work he did was sporadic, limited, and always resulted in an exacerbation of his symptoms.  (Tr. 29; 38-39; 42; 162; 184; 250; 258; 264; 265; 266; 274; 275).  Even if the ALJ were correct in not giving Dr. Gabriel's findings controlling weight, substantial evidence does not support the ALJ's finding that Cressman's mental impairment did not meet the *de minimus* standard of a step two determination.

    C. The above analysis demonstrates that the ALJ failed to fully consider the record before her, and thus, the court will not make a ruling on Cressman's remaining arguments regarding the ALJ improperly discounting Cressman's credibility and rejecting the RFC assessment of Cressman's treating psychiatrist and orthopedist.[4]  The ALJ is directed to reevaluate those issues once

---

and the prescribed treatment will serve as the basis for determining whether the impairment is expected to result in death or will continue to prevent the individual from engaging in any SGA (or any gainful activity) for the additional number of months needed to make up the required 12 months duration (e.g., 7 months for the claim being adjudicated in the 5th month, etc.)."  Since medical records for this case ended in April of 2006, one month before the assessed GAFs would cover the required year and because Cressman sought treatment only sporadically throughout this time period, the ALJ determined that his mental impairment did not meet the durational requirement. (Tr. 15 ¶¶ 2-3).  However, since there was no contrary medical evidence in the record and no significant improvement reflected, substantial evidence supports a finding that Cressman's mental impairment would last for a year.  The ALJ should reassess the durational requirement on remand, since the medical record will continue beyond April of 2006.

[4]The court notes that 20 C.F.R. § 404.1527(e) provides that the Social Security Administration "will not give any special significance to the source of an opinion on issues reserved to the Commissioner," such as the RFC. However, the ALJ rejected the treating orthopedist's opinion, in part, based on notes on a record from the Drexel

she has fully examined the record in accordance with the proper procedures and legal standards.

   5.  Therefore, this case must be remanded in order for the ALJ to supplement her decision in a manner consistent with this opinion.

   An appropriate Order follows.

---

Family Group Practice stating "no disability," "no records," and "no objective findings to support disability," without further explanation, where their records had previously noted that they needed "old records to fill out disability paperwork." (Tr. 227; 237). It appears that the basis for the statement, "no objective findings to support disability," could relate to the fact that they never received the "old records" and not that their examination of Cressman resulting in a finding on their part of no disability. If after fully considering the record, the ALJ determines that these notes in the records from the Drexel Family Group Practice regarding Cressman's disability are not supported by the record, since the basis for these findings is not clear, the ALJ "must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." S.S.R. 96-5p, at *6.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY CRESSMAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-4290 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**ORDER AND FINAL JUDGMENT**

AND NOW, this 1st day of August, 2007, upon consideration of the brief in support of review filed by plaintiff and response and reply thereto (Doc. Nos. 5; 6; 7) and having found after careful and independent consideration of the record that the Commissioner did not apply the correct legal standards and that the record does not contain substantial evidence to support the ALJ's findings of fact and conclusions of law, it is concluded that the action must be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g). Therefore, for the reasons set forth in the memorandum above, it is hereby **ORDERED** that:

1. **JUDGMENT IS ENTERED IN FAVOR OF THE PLAINTIFF, REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** for the purposes of this remand only and the relief sought by Plaintiff is **GRANTED** to the extent that the matter is **REMANDED** for further proceedings consistent with this adjudication; and

2. The Clerk of Court is hereby directed to mark this case closed.

S/Lowell A. Reed, Jr.
LOWELL A. REED, JR., S.J.